Filed 6/11/13  P. v. Hutter CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E055202 |
| v. | (Super.Ct.No. SWF028047) |
| JONATHAN GREGORY HUTTER, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Mark E. Petersen, Judge. Affirmed as modified.

Gregory L. Cannon, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Bradley Weinreb and William M. Wood, Deputy Attorneys General, for Plaintiff and Respondent.

This is an appeal by defendant and appellant Jonathan Gregory Hutter (defendant) from the judgment entered after a jury found him guilty as charged of forcible rape (Pen. Code, § 261, subd. (a)(2)), count 1),[1] three counts of forcible oral copulation with a child under the age of 14 years, who was seven or more years younger than defendant (§ 269, subd. (a)(4), counts 2-4), two counts of rape of a child under the age of 14 years (§ 269, subd. (a)(1), counts 5 & 6), forcible sodomy of a child under the age of 14 years, who was seven or more years younger than defendant (§ 269, subd. (a)(3), count 7), and lewd conduct with a child under the age of 14 years (§ 288, subd. (a), count 8). The jury also found true a multiple victim special allegation. (§ 667.61, subd. (e)(5).)

The trial court sentenced defendant to serve eight consecutive terms of 15 years to life in state prison. The trial court also imposed various fines, including a $3,800 fine under section 290.3, and restrictions, one of which prohibited defendant from knowingly owning, possessing, or having under his control any firearm, deadly weapon, ammunition, or related paraphernalia for the remainder of his life.

Defendant contends in this appeal that the trial court committed prejudicial error by excluding evidence that Jane Doe 1 had previously accused her grandfather of sexually molesting her and then recanted the accusation. Next, defendant contends the trial court's instruction on child sexual abuse accommodation syndrome (CSAAS) was incorrect and, as a result, improperly allowed the jury to consider that evidence as corroboration of Jane Doe 1's testimony about defendant. Defendant also challenges the

---

[1] All statutory references are to the Penal Code, unless indicated otherwise.

$3,800 fine the trial court imposed under section 290.3, which he contends should be $2,400. Defendant also contends the trial court's lifetime ban on defendant owning or possessing firearms and/or dangerous weapons is unlawful and must be stricken.

The Attorney General concedes both claims of sentencing error, but contests the amount of the section 290.3 fine the trial court should impose on remand. We conclude, as we explain below, both concessions are appropriate, and the section 290.3 fine should be $2,500, as the Attorney General contends. Defendant's remaining claims are meritless. Therefore, we will modify defendant's sentence and, as modified, affirm the judgment.

**FACTS**

The details of the various crimes are not pertinent to our resolution of the issues defendant raises in this appeal and are set out in the parties' respective briefs. Moreover, although defendant denies that he committed any of the alleged offenses, he does not dispute the evidence presented at trial. For our purpose, it is sufficient to note the charges in this case involved two victims, identified as Jane Doe 1 and Jane Doe 2. Jane Doe 1 is defendant's older daughter and the victim alleged in counts 1 through 7, who, in the summer of 2008 when she was 15 years old, told her boyfriend that defendant had been sexually molesting her since she was a very young child. The boyfriend told his parents, and they, in turn, reported the claims to Jane Doe 1's mother. A month earlier, Jane Doe 1's older brother, J.J., told his aunt that defendant had been sexually molesting Jane Doe 1. The aunt reported the claim to Jane Doe 1's mother, who is the aunt's sister.

After talking with the parents of Jane Doe 1's boyfriend, Jane Doe 1's mother spoke with the aunt, and the aunt called the police.

When interviewed by a police officer, Jane Doe 1 initially was uncooperative and unwilling to talk. Eventually, she agreed to respond yes or no to the officer's questions and in doing so provided sufficient information to establish that she had been sexually molested by defendant.

Additional facts will be recounted below as pertinent to the issues defendant raises on appeal.

## DISCUSSION

## 1.

## ADMISSIBILITY OF EVIDENCE THAT JANE DOE 1 HAD MADE A PRIOR SEXUAL MOLESTATION CLAIM

Defendant and the district attorney each filed pretrial motions asking the trial court to determine the admissibility of evidence that Jane Doe 1 had previously accused her grandfather of sexually molesting her and then had purportedly recanted the accusation. More particularly, in his trial brief, the prosecutor set out an investigation conducted by the Los Angeles County Sheriff's Department after Jane Doe 1's older brother, J.J., reported to school counselors in April 2008 that he had been sexually molested and believed his sister also was a victim. A local police officer contacted J.J. and, although J.J. refused to identify the offenders, the officer concluded the offenders were the children's paternal grandparents. When the officer contacted Jane Doe 1, she refused to talk with him. Two weeks later, a different officer contacted Jane Doe 1. At that time,

4

Jane Doe 1 talked with the officer and said that her brother had made up the molestation story because he "wanted to get into foster care."

In his opposition to the prosecutor's motion, defendant added that both J.J. (identified as John Doe) and Jane Doe 1 told the second police officer that the accusation was untrue, and the entire story had been fabricated. When later interviewed by a Los Angeles County deputy sheriff, Jane Doe 1 said she had been molested by her grandfather at her grandparents' home in Los Angeles County when she was about nine or 10 years old.[2]

Following a hearing on the issue, the trial court granted the prosecutor's motion to exclude all evidence regarding the so-called Los Angeles investigation on the grounds, first, that it was not relevant because J.J., not Jane Doe 1, was the accuser, and, next, because even if relevant, the probative value of the evidence was substantially outweighed by its potential for prejudice, confusion, and undue consumption of time under Evidence Code section 352. Defendant raised the issue again at trial during his cross-examination of Jane Doe 1 and also before resting his case. Both times, the trial court reaffirmed its earlier ruling and excluded the evidence.

Defendant contends the trial court's ruling was erroneous and had the effect of depriving him of his right to present a defense. We disagree.

---

[2] The declaration of defendant's trial attorney states that Jane Doe 1 was molested by her paternal grandfather when she was home alone with her paternal grandmother. Because it would have been impossible for Jane Doe 1's grandfather to molest her if she had been home alone with her grandmother, we assume the reference to the grandmother is a mistake.

## A.

## Standard of Review

"[A]n appellate court applies the abuse of discretion standard of review to any ruling by a trial court on the admissibility of evidence, including one that turns on the relative probativeness and prejudice of the evidence in question [citations].  Evidence is substantially more prejudicial than probative (see Evid. Code, § 352) if, broadly stated, it poses an intolerable 'risk to the fairness of the proceedings or the reliability of the outcome' [citation]."  (*People v. Waidla* (2000) 22 Cal.4th 690, 724.)  On appeal, we will not disturb the trial court's discretionary ruling "'*except* on a showing that the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice.'"  (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1124.)  In this context, a manifest abuse of discretion occurs if we are able to say it is reasonably probable the jury would have reached a result more favorable to defendant if the excluded evidence had been introduced at trial.  (*People v. Watson* (1956) 46 Cal.2d 818, 836.)

## B.

## Analysis

"Just as a prior false accusation of rape is relevant on the issue of a rape victim's credibility [citation], a prior false accusation of sexual molestation is equally relevant on the issue of the molest victim's credibility."  (*People v. Franklin* (1994) 25 Cal.App.4th 328, 335.)  In this case, J.J., not Jane Doe 1, made the sexual molestation accusation against the paternal grandparents.  Jane Doe 1 denied that accusation by saying it was

untrue, that J.J. had made it up. Later, Jane Doe 1 recanted that denial and told a third police officer that she had in fact been molested by her grandfather. Defendant did not present any evidence to show that Jane Doe 1's accusation of her grandfather was untrue or later recanted. In short, and contrary to defendant's characterization, this is not a situation in which Jane Doe 1 recanted a prior accusation of abuse; she recanted a previous denial that abuse had occurred.

Unlike evidence that a victim recanted an accusation of sexual molestation, evidence that a victim initially denied being sexually abused does not necessarily impugn the victim's credibility. Jody Ward, Ph.D., the prosecutor's expert witness on CSAAS, explained that a child who has been sexually molested would not respond in the same way an adult might respond in the same situation. For various reasons, other than dishonesty, a child who has been sexually molested might initially deny having been molested. Because evidence that Jane Doe 1 initially denied she had been sexually abused by her grandfather did not necessarily impugn Jane Doe 1's credibility, we cannot say the trial court abused its discretion by excluding the evidence from trial.

For this same reason, even if we were to conclude otherwise, exclusion of the evidence did not deprive defendant of his right to present a defense. His defense in this case was that he did not molest either alleged victim, and that they both were lying. To support that defense, defendant attacked Jane Doe 1's credibility with evidence that in 2007 and 2008, when she was a young teenager, Jane Doe 1 had many opportunities to disclose that defendant had molested her and yet she not only did not report the molestation, on several occasions, she also denied that she had been molested by anyone.

7

She said she had a good relationship with defendant and felt safe and protected when with him.

Moreover, application of the rules of evidence, "[a]s a general matter," does "not impermissibly infringe on the accused's right to present a defense." (*People v. Hall* (1986) 41 Cal.3d 826, 834.) Therefore, even if we were to conclude error occurred, it would be error only under state law. Consequently, reversal of defendant's conviction would be required if a miscarriage of justice occurred, i.e., only if we were to conclude the error was prejudicial in that it is reasonably probable the jury would have reached a result more favorable to defendant on any of the charges in this case if the jurors had heard that Jane Doe 1 initially denied she had been sexually abused by her grandfather. (*People v. Watson* (1956) 46 Cal.2d 818, 836.)

To the extent defendant contends the trial court erred when it again ruled the evidence inadmissible after Jane Doe 1 testified at trial about an incident in which she confronted defendant and he cried, we must again disagree. Defense counsel represented in the trial court that according to her statement to the defense investigator, Jane Doe 1 said defendant cried when she disclosed to him that she had been sexually molested by her grandfather. According to defense counsel, that was the only time in the interview that Jane Doe 1 mentioned defendant had cried. Because her testimony on direct examination was that defendant cried when Jane Doe 1 confronted him about sexually molesting her, it created the impression that defendant had admitted the accusation. In order to refute that negative inference, defendant renewed his request to question Jane Doe 1 about whether she had accused her grandfather of sexually molesting her and, in

8

doing so, clarify that defendant had only cried when Jane Doe 1 disclosed that information to him. In short, defendant wanted to impeach Jane Doe 1 with her statement to the defense investigator.

The trial court did not abuse its discretion by excluding the evidence in question. As the trial court noted, defendant might have cried more than once, even though Jane Doe 1 apparently had not mentioned that when the defense investigator questioned her. In short, and simply put, the probative value of the evidence is substantially outweighed by its potential for prejudice. (Evid. Code, § 352.) Even if we were to conclude otherwise, the purported error necessarily was harmless, for the reasons previously discussed.

## 2.

## ADEQUACY OF THE TRIAL COURT'S JURY INSTRUCTION ON CSAAS

Dr. Ward, the prosecution's expert witness, testified at trial regarding CSAAS.[3] Defendant submitted a proposed jury instruction directed at limiting the purpose for which the jury could consider the expert's testimony. The trial court refused that instruction, a ruling defendant does not challenge in this appeal. The trial court instructed the jury according to CALCRIM No. 1193 as follows: "You have heard testimony from Jody Ward regarding Child Sexual Abuse Accommodation Syndrome. [¶] Jody Ward's testimony about Child Sexual Abuse Accommodation Syndrome is not evidence that the defendant committed any of the crimes charged against him. [¶] You may consider this evidence only in deciding whether or not [Jane Doe No. 1]'s and/or [Jane Doe No. 2]'s

---

[3] Defendant does not challenge the expert's testimony or its admissibility. Therefore, we will not recount that testimony here.

9

conduct was not inconsistent with the conduct of someone who has been molested, and in evaluating the believability of her testimony."

Defendant contends the instruction is wrong because it permits the jurors to use CSAAS evidence as proof of guilt. In particular, defendant argues that by instructing the jury they could consider the CSAAS testimony in evaluating the victims' credibility, the trial court effectively advised the jurors that the CSAAS evidence could be viewed as corroboration of the victims' claims. We disagree.

As defendant correctly notes, expert testimony on CSAAS is admissible to disabuse jurors of possible misconceptions regarding how a sexually abused child would likely act. (*People v. McAlpin* (1991) 53 Cal.3d 1289, 1300-1301.) CSAAS evidence is also admissible when the victim's credibility is attacked. (*People v. Patino* (1994) 26 Cal.App.4th 1737, 1745.) In this case, the credibility of both victims was in question because defendant denied that he had molested either child. As noted above in the fact summary, defendant based his defense in part on the fact that Jane Doe 1 had not reported the molestation earlier, even though she had several opportunities to do so.

Defendant's argument that the trial court's instruction allowed the jury to consider CSAAS evidence as corroboration assumes the instruction compelled the jury to believe the victims. The instruction, however, does not compel a particular result; it simply instructed the jurors that CSAAS evidence may be considered only for limited purposes, one of which is deciding the believability of the victims' claims. The instruction allowed the jury to decide whether the victims were credible and, therefore, telling the truth; it did not compel the jury to reach a particular conclusion. Because the jury instruction is

10

neutral, it did not have the effect of instructing the jury that CSAAS evidence may be considered as corroboration of the victims' testimony.

In short, CALCRIM No. 1193 correctly states the pertinent legal principles, and we therefore reject defendant's challenge to that jury instruction.

**3.**

**SENTENCING ERRORS**

**A.  Section 290.3 Fines**

Defendant contends the trial court incorrectly relied on the version of section 290.3 in effect at the time of sentencing to impose a fine totaling $3,800, because that version of the statute only came into effect on September 20, 2006.  Before then, section 290.3 specified a fine of $200 for the first conviction and $300 for the second conviction of specified offenses, which include those of which the jury found defendant guilty in this case.  Consequently, defendant contends the correct total fine should be $2,400.  The Attorney General concedes the error, but contends the total fine should be $2,500.  We agree with the Attorney General.

Until September 20, 2006, section 290.3 provided that a fine of $200 for the first conviction or $300 for a second and every subsequent conviction be imposed on every person convicted of any offense specified in subdivision (a) of section 290.  (Former § 290.3, subd. (a); Stats. 1995, ch. 91, § 121; Stats. 2006, ch. 69, § 27, eff. July 12, 2006.) The statute was amended effective September 20, 2006, to specify a fine of $300 for the first conviction and $500 for every second and subsequent conviction.  (Former § 290.3, subd. (a); Stats. 2006, ch. 337, § 18, eff. Sept. 20, 2006.)

11

The parties agree that count 1 is the only conviction that comes within the amended statute, and that the remaining counts are subject to the lower fines. The Attorney General notes that both versions of section 290.3 specify a lower fine for the first conviction and a higher fine for second and subsequent convictions, but the statute does not define the phrase "first conviction." It could mean a conviction in an earlier proceeding, or it could mean a conviction for a crime committed earlier in time than another crime, even if both are adjudicated in the same proceeding. The Attorney General asserts that the latter interpretation is the one that would not lead to arbitrary and, therefore, absurd results in a case such as this. We agree.

"Under settled canons of statutory construction, in construing a statute we ascertain the Legislature's intent in order to effectuate the law's purpose. [Citation.] We must look to the statute's words and give them 'their usual and ordinary meaning.' [Citation.] 'The statute's plain meaning controls the court's interpretation unless its words are ambiguous.' [Citations.]" (*Imperial Merchant Services, Inc. v. Hunt* (2009) 47 Cal.4th 381, 387-388.)

In a case such as this, which involves multiple convictions of crimes all subject to fines under section 290.3, the phrase "first conviction" necessarily means the crime alleged to have been committed first in time. Any other interpretation would either allow defendant to avoid the higher fine specified for second and subsequent convictions, or would turn on the arbitrary order in which the prosecutor alleges the crimes in the complaint and/or information. Either of those options would lead to absurd and unintended results. Accordingly, we agree with the Attorney General that the section

12

290.3 fines in this case must be imposed based on the date the alleged crime occurred. Counts 2, 3, and 4 are alleged to have occurred between December 10, 1999, and December 10, 2002. Therefore, defendant's conviction on one of those counts constitutes his "first conviction" within the meaning of section 290.3 and is subject to the fine of $200 then in effect. Two of those counts are subject to the $300 fine specified for second and subsequent convictions under the version of section 290.3 then in effect. Defendants convictions on counts 5, 6, 7, and 8 are also subsequent convictions and subject to the $300 fine. Count 1, however, is alleged to have occurred between December 10, 2006 and November 28, 2007, and is subject to the amended statute and the fine of $500 for second and subsequent offenses. Therefore, the total fine under section 290.3 is $2,500.[4]

## B. Weapons Possession Order

Defendant contends, and the Attorney General agrees, that the trial court's order that states defendant is not to "own, possess or have under [his] control any firearm, deadly weapon, ammunition or related paraphernalia for life" is not authorized by law. The Attorney General's concession is appropriate.

As the Attorney General points out, the subject of weapons possession is covered by section 29800, subdivision (a)(1), which states, "Any person who has been convicted of a felony under the laws of the United States, the State of California, or any other state, government, or country, or of an offense enumerated in subdivision (a), (b), or (d) of Section 23515, or who is addicted to the use of any narcotic drug, and who owns,

_____

[4] $500 (count 1) + $200 (count 2) + $1,800 (6 x $300; counts 3, 4, 5, 6, 7 & 8) = $2,500.

13

purchases, receives, or has in possession or under custody or control any firearm is guilty of a felony." Section 29810 requires the trial court to give written notice of the restriction at the time of sentencing.

Section 29800 refers only to firearms. The trial court's order in this case extends beyond firearms and includes "any . . . deadly weapon, ammunition or related paraphernalia." The quoted language is not authorized by law and, therefore, we will direct that it be stricken.

## DISPOSITION

The judgment is modified by reducing the total fine under section 290.3 from $3,800 to $2,500 and by striking the order that states defendant is not to "own, possess or have under your control any firearm, deadly weapon, ammunition or related paraphernalia for life." As modified, the judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER
J.

We concur:

HOLLENHORST
Acting P. J.

RICHLI
J.

14